**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WYATILLIUS HOWARD,

    Petitioner,

v.

MICHAEL S. EVANS,

    Respondent.

No. C 09-04750 JSW

**ORDER GRANTING MOTION TO DISMISS PETITION AS SECOND OR SUCCESSIVE AND DENYING CERTIFICATE OF APPEALABILITY**

## INTRODUCTION

Now before the Court for consideration is the Motion to Dismiss as Second or Successive filed by Respondent Michael S. Evans ("Respondent"). Having considered the parties' papers, relevant legal authority, the record in this case, and good cause appearing, the Court HEREBY GRANTS Respondent's motion.

## BACKGROUND

**A.  Procedural History.**

On April 17, 1993, Petitioner, Wyatillius Howard ("Howard"), was convicted of second degree murder on an aiding and abetting theory. Howard also was convicted of a firearms enhancement. (*See* Pet. ¶¶ II, III.) He was sentenced to 18 years to life, and, on direct appeal, the California Court of Appeal affirmed his conviction but reduced his sentence to 16 years to life. (Pet. ¶ XVII, Ex. A (State Court Opinion at 23-31).) The California Supreme Court denied a petition for review on March 22, 1995. (Pet. ¶ XVII.) Howard filed a petition for a writ of habeas corpus concurrently with his direct appeal, which was denied following an evidentiary

hearing. (*Id.* ¶¶ XVIII-XIX.)

Howard appealed, and the Court of Appeal dismissed the appeal as procedurally barred on June 26, 1995. On June 23, 1997, Howard filed a petition for a writ of habeas corpus in the California Court of Appeal, which was denied on July 15, 1997. On September 23, 1997, Howard filed a petition for writ of habeas corpus in the California Supreme Court, which was denied on December 23, 1997. (*Id.* ¶ XX.)

On February 19, 1998, Howard filed his first federal petition for a writ of habeas corpus in this Court, *Howard v. Newland*, C-98-00666-FMS. Judge Smith denied the petition as untimely on June 24, 1998. (*Id.* ¶ XXI.) Howard's requests for certificates of appealability were denied by Judge Smith and by the Ninth Circuit on July 28, 1998 and August 31, 1998, respectively. On May 5, 2000, Howard filed an application for leave to file a second or successive petition with the Ninth Circuit, *Howard v. Newland*, 00-70543, which was denied on June 28, 2000.

On January 5, 2007, Howard filed a petition for a writ of habeas corpus in the California Superior Court, County of Alameda, raising the claims set forth in the instant petition. (Petition ¶ XXXXII.) After receiving briefs from the parties, the Superior Court denied the petition on the basis that it was untimely and an abuse of the writ. (*Id.* ¶ XXXXII, Ex. O.) September 4, 2008, Howard filed a petition for a writ of habeas corpus in the California Court of Appeal, which was denied on February 5, 2009. (*Id.* ¶ XXXXIV, Ex. P.) On February 18, 2009, Howard filed a petition for a writ of habeas corpus in the California Supreme Court, which was denied on September 9, 2009. (*Id.* ¶ XXXXV, Ex. Q.)

On October 6, 2009, Howard filed the instant Petition, in which he raises two claims for relief. In his first claim for relief, Howard alleges that the prosecution failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), specifically a taped statement by an eyewitness to the murder. In his second claim for relief, premised on *Strickland v. Washington*, 466 U.S. 668 (1984), Howard alleges that his trial counsel was ineffective because he failed to interview this eyewitness and did not conduct any investigation about him and, thus, failed to discover the exculpatory evidence he could have provided.

2

**B.     Factual Background.**

Howard's conviction stems from the murder of Anthony Abrams ("Abrams") on August 30, 1992.  (Pet. ¶ VII, Ex. A (*People v. Charles, et al.*, AO62711, Slip Opinion at 2 (hereinafter "Appellate Opinion").)  Earlier that day, Howard and others had an altercation with Abrams' sister, Jackie Moore.  Sometime thereafter, another of Moore's brothers, Dual Moore, had an altercation with Howard's nephew, which resulted in a further altercation at Jackie Moore's home.  (Pet., Ex. A (Appellate Opinion at 2-3).)  Howard, his co-defendant Clarence Charles ("Charles"), and others eventually left the scene and someone heard them say "Let's go to Brookfield and get her brother."  (*Id.* at 4.)  According to the Court of Appeal, this was a reference to the victim, although Howard disputes this characterization of the evidence.  (*See* Surrebuttal at 5:7-11 & n.3.)  Howard, Charles, and at least one other man encountered Abrams at the corner of 98th and Edes Streets in Oakland, and they argued.  According to the testimony of two prosecution witnesses, Ruthie Hill ("Hill") and Joe Ralls ("Ralls"), Abrams ran, and Charles shot Abrams twice. (Ex. A, (Appellate Opinion at 4).)  The defendants presented an alibi defense at trial, which was discredited by the prosecution.  (*Id.* at 6-8.)

Howard has filed the instant Howard, because he claims that the prosecution withheld exculpatory evidence relating to an eyewitness Ladale Robinson ("Robinson").  Although Robinson was identified as a witness, Howard alleges that the prosecution withheld evidence of a taped statement, in which Robinson advised the police that he saw three men engaged in an altercation with Abrams and that two of the three turned away and returned to their car before the third man shot him.  (Pet. ¶ XXIX.)  According to Howard, the information in the taped statement was not included in the police report or police notes that identified Abrams.  In contrast the police report and notes recounted that Robinson saw two men engage in a fight with Abrams and that both suspects were present when Abrams was shot, which more closely resembled the account of the other eyewitnesses.  (*Id.* ¶¶ XXV-XXVI; *see also* Pet. Exs. B (Police Report), C (Notes of Robinson Interview ("Thiem Notes")), E (Transcript of Recorded Interview with Ladale Robinson ("Robinson Transcript")), and F (Declaration of Ladale Robinson).)

3

1  Howard did not learn about the taped interview until approximately 2005 and thereafter
2  began to investigate the issue. As a part of that investigation, Howard interviewed trial counsel
3  about his knowledge of the Robinson interview. (*Id.* ¶¶ XXIV-XXXVIII.) According to trial
4  counsel, he does not believe that he ever heard the Robinson interview, concedes that he did not
5  undertake any investigation about Robinson, and acknowledges that a defense based on
6  Robinson's version of events would have been more effective than the alibi defense. (*Id.* ¶¶
7  XXXIII-XXXVI, Ex. H (Declaration of Theodore Otis Berry).)

## ANALYSIS

### A. Applicable Legal Standard.

The Government moves to dismiss the Petition on the basis that it qualifies as a "second or successive" petition. 28 U.S.C. § 2244 provides, in pertinent part:

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--
>
> ...
>
> the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(1), (2)(B)(i)(ii).

A petitioner must seek authorization from the appropriate court of appeals before filing a "second or successive" petition with the district court. 28 U.S.C. § 2244(b)(3)(A); *see also* Fed. R. Hab. P. 9.

### B. The Motion to Dismiss Is Granted.

Respondent argues that because Howard's petition is a second or subsequent petition, it must be dismissed. The term "second or successive," is a legal term of art, which has not always been interpreted literally. *See United States v. Lopez*, 577 F.3d 1053, 1063 (9th Cir. 2009) (citing *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007)). In *Lopez*, the defendant filed a motion to vacate her conviction, pursuant to 28 U.S.C. § 2255, on the basis of an alleged *Brady*

4

violation. The district court had rejected the Government's argument that it lacked jurisdiction to hear motion on the basis that the motion qualified as a "second or successive" application. The district court then proceeded to deny the motion on the merits.[1] *Id.* at 1055.

On appeal, the government urged the court to adopt the "broad rule" that all second-in-time *Brady* claims should be subject to the gatekeeping requirements of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The Ninth Circuit noted that to adopt the Government's broad rule "would completely foreclose federal review of some meritorious claims and reward prosecutors from failing to meet their constitutional disclosure obligations under *Brady*." *Id.* at 1064-65. However, it also rejected the defendant's argument that the Supreme Court's decision in *Panetti* supported the proposition that second-in-time *Brady* claims should be categorically exempt from those same gatekeeping requirements.

Instead, the court held that "*Brady* claims are not categorically exempt from AEDPA's gatekeeping provisions" and also held "that second-in-time *Brady* claims that do not establish materiality of the suppressed evidence are subject to dismissal...." *Id.* at 1066. The *Lopez* court did not "resolve the more difficult question whether *all* second-in-time *Brady* claims must satisfy AEDPA's gatekeeping requirements." *Id.* at 1067 (emphasis in original). Because the court concluded that the defendant failed to establish materiality, it found that her motion to vacate was a "second or successive" application for habeas relief. Because she had not obtained permission from the court of appeals to file the motion, it determined the district court did not have jurisdiction to consider the merits of her claim. *Id.* at 1067-68.

Howard argues that this case presents the Court with the question left open in *Lopez*, namely whether district courts have jurisdiction "consider a subset of meritorious *Brady* claims that federal courts would have considered on the merits under the pre-AEDPA abuse-of-the writ doctrine but that would be barred under a literal reading of 'second or successive' in § 2255(h)(1)." *Id.* at 1056. The Court follows the Ninth Circuit's analysis in *Lopez* to resolve this question. It is undisputed that the instant petition raises a *Brady* claim that is "second-in-

---

[1] 28 U.S.C. § 2255(h) also requires that a defendant obtain permission from the appropriate court of appeals before filing a second or successive application for habeas relief. *See Lopez*, 577 F.3d at 1061 & n.6.

5

time." It also is undisputed that Howard did not seek leave from the Court of Appeals to file this petition. Because second-in-time *Brady* claims are not "categorically exempt" from AEDPA's gatekeeping provisions, unless Howard can demonstrate that the evidence withheld by the Government is "material," the Court must dismiss his Petition. *Lopez*, 577 F.3d at 1066.

In order to establish a *Brady* violation, Howard must show that the evidence "was: (1) favorable to the accused, (2) suppressed by the government and (3) material to the guilt or innocence of the defendant." *Id.* at 1059.[2] Howard can demonstrate "materiality" for *Brady* purposes, if he can show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 434-36 (1995). As such, the ultimate question "is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worth of confidence." *Kyles*, 514 U.S. at 434.

As set forth above, Howard's *Brady* claim is premised upon the alleged discrepancy between Robinson's taped statement and the Ralls' and Hill's testimony. Specifically, Howard argues that Robinson advised the police he saw *three* men, rather than two, engaged in an altercation with Abrams, and that two of these men turned around and one of them remained facing the victims and the shots were fired, whereas Ralls and Hill placed Howard next to the shooter. (*See* Pet. Ex. E (Robinson Transcript at 4:16-8:6).)

---

[2] The Ninth Circuit has held that a defendant cannot establish a *Brady* claim when he or she is aware of the essential facts that would enable him to take advantage of any exculpatory evidence. *See, e.g., United States v. Bond*, 552 F.3d 1092, 1095-96 (9th Cir. 2009). Howard does not argue that the state withheld the police report and the Thiem Notes both of which identify Robinson as a witness to the crime and state that Robinson provided a taped statement to the police. (Pet., Exs. B (Police Report), C (Thiem Notes).) Similarly, the Thiem Notes also refer to the fact that Robinson saw three men approach the victim. (*See* Pet., Ex. C (Thiem Notes).) Arguably, therefore, Howard was aware of essential facts that would have enabled him to take advantage of the purportedly exculpatory evidence.

As noted, Howard's second claim for relief is an ineffective assistance of counsel claim premised on trial counsel's failure to interview Mr. Robinson. Because Howard cannot establish that the evidence in question was material, he also would be unable to establish the prejudice prong of his ineffective assistance of counsel claim and the motion to dismiss is granted as to that claim on this basis.

6

The Court concludes that he has not established that the evidence was material. Howard was convicted of second degree murder on an aiding and abetting theory. The primary difference between the testimony presented at trial by Ralls and Hill, and Robinson's putative testimony, is that the shooter was standing alone when he shot Abrams, that two of the men with him had walked away, and, per a declaration Robinson provided in 2006, those two men seemed surprised by the shooting. The Court examines this evidence "in the context of the entire record." *United States v. Jernigan*, 492 F.3d 1050, 1054 (9th Cir. 2007) (internal quotations and citations omitted). In addition to the testimony provided by Ralls and Hills, the jury also heard evidence that Howard assaulted Abrams immediately before the shooting and heard evidence that Howard and the others had gone to the Brookfield neighborhood with the intention of killing Abrams. (*See, e.g.,* Pet. Ex. A (Appellate Opinion at 4).)

Therefore, even if the jury heard testimony from Robinson that Howard walked away from Abrams before the shooting occurred, based on this record, the Court cannot say that testimony "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435. Accordingly, pursuant to *Lopez*, Howard was required to seek leave from the Court of Appeals before filing this Petition. Because he did not, the Court lacks jurisdiction to consider his claim.

## CONCLUSION

For the foregoing reasons, Respondent's motion to dismiss is GRANTED. A certificate of appealability is DENIED. A separate judgment shall be entered, and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 23, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE